CARL HANNEMANN ET AL., APPELLEES, V. WILHELMINE OTT
ET AL., APPELLANTS.

FILED JUNE 5, 1915. No. 18091.

1. **Specific Performance: PAROL AGREEMENT TO DEVISE.** A parol agreement to leave one's property to adopted children in consideration that they would, before and after becoming of age, assist in the work upon the farm of the promisor and in the family affairs generally, may be enforced if fully performed for many years in good faith by the adopted children.

2. ———: ———: **HOMESTEAD: STATUTE OF FRAUDS.** In such case the fact that the promisor, at the time of making such promise, was the owner of a homestead, which was the principal part of his property, will not render such promise unenforceable, as within the statute of frauds.

3. ———: ———. In such case the fact that the promisor had married the mother of his adopted children before such promise was made, and, after they had all lived together as one family for more than twenty years, had obtained a divorce from her and had been required to pay her a large amount as permanent alimony, will not prevent the enforcement of the contract with his adopted children after the death of the promisor.

4. **Evidence** found to be sufficient to prove the contract alleged.

5. **Witnesses: COMPETENCY.** While the widow of a deceased person is not a competent witness to conversations and transactions between herself and the deceased, she is competent to testify to transactions and agreements between the deceased and his adopted children, in which she took no part.

6. **Vendor and Purchaser: INNOCENT PURCHASERS: SUFFICIENCY OF EVIDENCE.** Defendants contend that, under contract with the deceased, they gave a valuable consideration for the property devised to them, and without notice of any claim of plaintiffs. But the evidence shows that defendants had knowledge of sufficient facts to put them upon inquiry as to the rights of plaintiffs, and cannot claim as innocent purchasers of property without notice.

APPEAL from the district court for Jefferson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*Heasty & Barnes* and *Charles A. Orth,* for appellants.

*W. L. Kirkpatrick* and *C. H. Denney*, contra.

SEDGWICK, J.

In 1879 the mother of these plaintiffs, then a widow with small children, came to this country from Germany and located in York county. A few months afterwards she was married to Wilhelm Hannemann, and later the children were adopted by Wilhelm Hannemann, and they all lived together as one family for several years. Mr. Hannemann died in Milwaukee, Wisconsin, in November, 1911. A short time before his death he made a will giving all of his property to collateral heirs in Milwaukee. These plaintiffs brought this action in the district court for Jefferson county, alleging that at the time of the marriage of their mother with Mr. Hannemann he agreed to adopt these plaintiffs as his children and to leave to them all the property that he might have at the time of his decease, and that, in pursuance of that agreement, he did adopt them; also alleging that at various times before, and at the time these plaintiffs became of age, the said deceased agreed with these plaintiffs that, if they would continue at their home with him, and assist in the work upon the farm which they then had, and assist in paying the liabilities against the farm, all the property that he had at his decease should be theirs, and that they relied upon that agreement and did assist, and asked for a specific performance of the agreement. The trial court found the issues in favor of the plaintiffs and decreed a specific performance. The defendants have appealed.

The briefs do not comply with our rule 12 (94 Neb. XI), and it is difficult to ascertain the questions of law relied upon for a reversal; but, as these briefs were filed a very short time after rule 12 was adopted, we have examined them, and, as nearly as we can ascertain, the defendants rely upon three propositions for reversal. They contend that at the time the alleged agreement with these plaintiffs was made the property of the deceased consisted of a homestead, and, as there was no written agreement to convey this homestead to the plaintiffs, an oral agreement

would be void within the statute of frauds. They also contend that there is not sufficient proof of the alleged agreements, or that these plaintiffs furnished to the deceased, a sufficient consideration for willing his property to them, and that they were at the time without any knowledge or notice of any former agreement, and therefore, as we understand their argument, are in the position of innocent purchasers without notice.

1. As to the first contention, it is perhaps sufficient to say that the alleged agreement of the deceased was not to convey the homestead or any specified part of it, but was a general agreement that, since he had adopted them as his children, if they would assist him in caring for the farm and paying the debts, they should have at his decease such property as belonged to him to bestow. It appears that in September, 1911, the deceased was divorced from the mother of the plaintiffs, and the court allowed her $5,000 permanent alimony. The defendants urge that this allowance was probably in view of the interest that the children had in the estate, and therefore should be considered to satisfy their claim; but, as already suggested, the alleged agreement was that the plaintiffs should have such property as the deceased had at the time of his death, and, even if their mother had been allowed an unreasonable alimony, it would not have affected their agreement with the deceased.

2. When we consider that the deceased adopted these plaintiffs, and in that adoption agreed to give them all the rights of his lawful children, we think that the evidence in this record is ample to prove the agreement on the part of the deceased that these plaintiffs should upon the condition named have such property as he might own at the time of his decease.

Mrs. Hannemann was probably incompetent to testify to transactions and conversations between herself and the deceased, and the trial court so regarded her, and declined to consider her evidence upon those matters. As to the agreement between these plaintiffs and the deceased, in which Mrs. Hannemann took no part, she was properly re-

garded as a competent witness. She testified that when Carl was about 19 years of age the deceased told Carl: "A. Well, he told him when he stays he should have all that was left to give," and, also, "he told them all together that, when they stay with him and paid all debts and mortgages and all off, they should have all what was left." She admitted that when Carl left home "he got just two old horses and one old wagon and a harrow and a plow is all what he got." The witness Charles E. Mulig, who was born in York county, and was 37 years old at the time of the trial, and had lived very near to the Hannemann place, testified: "Q. Did you ever hear the decedent, Mr. Hannemann, in his lifetime, explain why it was his children remained there and worked on the farm after they were of legal age? A. Yes, sir. Q. How many of these conversations might you have heard? A. Oh, quite a number; probably a dozen. Q. Where were these conversations? A. Well, I noticed the most while I was threshing, running a threshing machine. * * * Q. What did he say on some particular occasion, as nearly as you can recall it now? A. Well, in regard to the boys being at home and working, and he thought a good deal of the proceeds of the golden grain flowing, the good golden grain rolling out of the spouts of the threshing machine, and, of course, drawing attention, and I made the remark, of course, why it was that these boys stayed at home so good, so he said, 'We have a mutual agreement that when I am through with this property it shall become theirs to hold.' Q. Where was that conversation, as nearly as you can recollect; at the Hannemann farm at threshing? A. Yes. Q. When was that? A. That was about in 1900. I threshed for him several years; probably six or seven years; I owned a machine and run it. Q. Can you recall more than one conversation, and can you locate some one? A. Yes; in the yard in the evening after the day's work was over. Q. When was that? A. That was at the same season, some time we was threshing there. Q. Tell what that conversation was; who was it with? A. It was indirectly with the whole of them, several of them. Q. Were the

Hannemann boys there? A. They were. Q. Tell what it was. A. It was the same practically. He told us, 'We have a mutual agreement that when I was through with this property,' he said, 'it was all to become theirs.' Q. How many times have you and him referred to that understanding? A. Well, probably a dozen times, different times. Q. You are not a relative of any of the Hannemann children? A. Not at all." There were at least eight of the neighbors who gave similar testimony.

The plaintiffs were industrious, and interested in the family welfare, and conducted themselves as children in well-regulated families ordinarily do, until about the time of the divorce proceedings, when they appear to have sympathized more with their mother, which is not uncommon in families generally under such conditions. The deceased adopted these children as his own in July, 1889, and in his application for adoption stated that he did "bestow upon them all the rights of children and privileges and immunities of children born in lawful wedlock, and that all of said minors take the name of and be known by the surname of Hannemann." For many years afterwards he controlled these children, availed himself of their services upon his agreement, as above stated. They have performed their part of the agreement as well as he could have expected them to do.

Gustave E. Ott, one of these defendants, and a son of a second cousin of the deceased, who was named as executor of the Milwaukee will under which the defendants claim, in his application for probate of the will, testified that these plaintiffs, naming them, are "the heirs and next of kin of the said William Hannemann, deceased." The Milwaukee will contained the provision: "I give, devise and bequeath to my four adopted children, viz., Carl Hannemann, Fred Hannemann, Christian Hannemann and Johanna Hannemann, each one ($1.00) dollar. I do this intentionally, because they have received sufficient help and assistance from me, while I was living, and because they did not treat me right." The defendants therefore had sufficient notice to put them upon inquiry as to the

rights of these plaintiffs, even if they could under any circumstances claim as innocent purchasers under the will. The consideration which defendants rendered for this donation to them consisted in the care they rendered deceased, and expenses connected with his last illness and burial. Deceased arrived at the home of Gustave Ott in Milwaukee on the 19th of October, and died November 1. Mr. Ott filed an itemized claim for these services in the probate court of Jefferson county. It amounted to $162.40. The Milwaukee will was executed on the day the deceased arrived at Mr. Ott's home. Mr. Gustave Ott is a principal witness for defendants, and his affidavit verifying this claim is inconsistent with his evidence that this property, amounting to several thousand dollars, was given these defendants in consideration of the services rendered deceased.

The judgment of the district court appears to be amply supported by the evidence, and is

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.